**IN THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

STATE OF WEST VIRGINIA, ex rel.
DARRELL V. MCGRAW, JR.,
Attorney General,

                Plaintiffs,

v.                                      CIVIL  ACTION  NO.  3:11-0492

CAPITAL ONE BANK (USA) N.A.;
CAPITAL ONE SERVICES, LLC, a Delaware corporation;
CAPITAL ONE SERVICES II, LLC, a Delaware corporation;
CAPITAL ONE SERVICES III, LLC, a Delaware corporation;
and COSI RECEIVABLES MANAGEMENT, INC., a Delaware corporation,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is the plaintiff's motion to remand [Doc. 8] and the defendants' motion for an evidentiary hearing. [Doc. 12]  For the reasons that follow, the Court **GRANTS** the plaintiff's motion and **DENIES** the defendants' motion.  Moreover, the Court **DIRECTS** the Clerk to again **STRIKE** this case from the docket and **REMAND** it to the Mason County Circuit Court where it was originally filed.

**I.**      **Background and Procedural History**

The Attorney General for the State of West Virginia ("Attorney General" or "Plaintiff") filed the instant action in Mason County Circuit Court on January 20, 2010.  The Complaint alleges that defendants Capital One Bank, USA N.A. and its numerous subsidiaries ("Capital One" or "Defendants") engaged in credit card practices that are illegal under the West Virginia Consumer

Credit and Protection Act (the "WVCCPA").  W. Va. Code § 46A-1-101, *et seq*.  The Complaint

alleges various "Counts" and categories of illegal acts.  On March 2, 2010, Defendants attempted

to remove the case to this Court arguing that two of the Counts—Count III and Count VII—were

preempted by §§ 85 and 86 of the National Bank Act ("NBA").  12 U.S.C. §§ 85, 86.

     In Count III, the Attorney General challenges Defendants' practices that allegedly caused

consumers to exceed their credit limits and incur over-the-limit fees.  Specifically, Plaintiff alleges

that Defendants billed and attempted to collect over-the-limit fees when it was Capital One's

monthly finance charges or sales of Capital One's own goods or services which caused the consumer

to exceed his or her limit.  Plaintiff also contends that Capital One had no procedure to stop

soliciting goods and services when a cardholder was in excess of his or her limit, and that Capital

One failed to decline charges made to a consumer's account even when that account was over the

limit.  According to Plaintiff, this conduct violated various provisions of the WVCCPA.  *See, e.g.*,

W. Va. Code § 46A-6-104 (unfair or deceptive acts or practices); *Id.* § 46A-6-102(7)(N) (omitting

material information); *Id.* § 46A-7-109(1)(a) (enforcing unconscionable terms or provisions of

consumer credit sales and loans); *Id.* § 46A-7-109(1)(b) (fraudulent or unconscionable conduct in

inducing consumers to enter into consumer loans); *Id.* § 46A-7-111.

     Count VII, entitled "Making and Enforcing Unconscionable Terms of Provisions of

Consumer Credit Sales or Consumer Loans," *see W. Va. ex rel. McGraw v. Capital One Bank (USA)*

*N.A.*, No. 3:10-0211 (citing Pl.'s Compl. 24, No. 1-1), concerns practices related to Defendants' low-

limit credit cards.  The Attorney General alleges that membership fees along with fees for other

services were billed on the cardholder's second monthly statement.  As a result, many consumers

had substantially less than $200 to $300 of credit available on their cards and some would actually

be over their limits as a result of fees at the time the card was issued.  Once a cardholder was over his limit, Capital One would routinely add a monthly over-the-limit fee.  Capital One also applied late fees on these cards and would charge over-the-limit fees even if the cardholder's limit was exceeded due to a late fee.  According to Plaintiff, Defendants would also issue more than one low-limit card rather than increasing the limit on a single card, subjecting a consumer to potentially more than one set of fees.  Plaintiff alleges that none of the late fees or over-the-limit fees were disclosed in Capital One's promotional materials.  Plaintiff contends that these practices violate many of the same provisions of the WVCCPA as did those in Count III, including: (1) unfair or deceptive acts or practices under W. Va. Code § 46A-6-104; (2) enforcing unconscionable terms or provisions of consumer loans or credit sales within the meaning of W. Va. Code § 46A-7-109(1)(a); (3) fraudulent or unconscionable conduct in inducing consumers to enter into consumer loans or credit sales within the meaning of W. Va. Code § 46A-7-109(1)(b); and (4) the making or collecting of charges in excess of those permitted by the WVCCPA in violation of W. Va. Code § 46A-7-111.

Defendants argued that Counts III and VII of Plaintiff's Complaint were preempted by §§ 85 and 86 of the NBA, *see* 12 U.S.C. §§ 85, 86, because they were "direct challenges" to the interest rate charged by Defendants.  The Court rejected these arguments, and concluded that Plaintiff's claims were not traditional usury challenges.  Consequently, they were not completely preempted by the NBA and not removable based on the Supreme Court's holding in *Beneficial National Bank v. Anderson*, 539 U.S. 1, 6 (2003) ("*Beneficial*").  *See W. Va. ex rel. McGraw v. Capital One Bank (USA) N.A.*, No. 3:10-0211, 2010 U.S. Dist. LEXIS 74639, at *12 (S.D. W. Va. July 22, 2010); *cf.*, *e.g.*, *Phipps v. FDIC*, 417 F.3d 1006, 1012 (8th Cir. 2005) (holding that challenges to mortgage fees amounted to challenges to "interest" rates).  Essentially, the Court reasoned that Plaintiff's

Complaint challenged the practices and methods used to "entice" and "deceive" cardholders into accruing fees—conduct clearly not falling within the confines of §§ 85 and 86 of the NBA.  *See Capital One*, 2010 U.S. Dist. LEXIS 74639, at *12-14.  Thus, the Court ordered that the case be remanded to the Circuit Court.  *See id.* at *14-15.

After the matter was remanded, the Mason County Circuit Court denied Defendants' motion to dismiss.  On June 20, 2011, Plaintiff sent Defendants' counsel a letter proposing a settlement agreement.  The letter outlines the Attorney General's position regarding injunctive relief.  It proposes a permanent injunction restraining Defendants from engaging in various types of conduct. Pertinently, Plaintiff wants to restrain Defendants from imposing any "over-the-limit fee[s] in excess of the total amount of credit extended above the credit limit during the billing cycle in which the fee is imposed."  *See* Pl.'s Mot. to Remand Ex. 7, at 4, No. 8-7 (hereinafter, "Proposed Settlement"). Plaintiff also desires to cap the amount of most fees on low-limit accounts.  *Id.* Ex. 7, at 6.  Namely, the proposal seeks to prevent Defendants from imposing "any penalty fees except for a late fee" on any low-limit amount.  *Id.* Ex. 7, at 6-7.  On July 20, 2011, Defendants filed a second notice of removal, contending that this settlement proposal now clearly illustrates that the Attorney General is in fact challenging the *amount* of fees Defendants charge and their ability to charge those fees.

## II.    Discussion

A civil action is removable if the plaintiff's claim is one "arising under" federal law.  28 U.S.C. § 1441(b).  "[A] suit arises under [federal law] . . . when the plaintiff's statement of his own cause of action shows that it is based upon those laws or [the] Constitution.  It is not enough that the plaintiff alleges some anticipated defense to his [state] cause of action and asserts that the defense is invalidated by some provision of [federal law]."  *Louisville & Nashville R. Co. v. Mottley*, 211

U.S. 149, 152 (1908). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial*, 539 U.S. at 6. Thus, courts will typically examine "well pleaded" allegations and ignore potential defenses. *Id.* However, certain exceptions to the "well pleaded complaint" rule do exist. For instance, "[w]hen [a] federal statute completely pre-empts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Id.* at 8. Such a case is removable under 28 U.S.C. § 1441(b).

Defendants point out that a notice of removal may be based upon "an amended pleading, motion, order or *other paper*" from which the Court can ascertain that "the case is one which . . . has become removable" after initial filing. *See* 28 U.S.C. 1446(b) (emphasis added). They contend that Counts III and VII of the Complaint are direct challenges to the rate of interest charged and Defendants' ability to charge certain levels of interest, and are therefore completely preempted. Defendants submit that this conclusion is now clear given the contents of Plaintiff's June 20, 2011 settlement proposal. The highlighted provisions of the settlement proposal are as follows:

> 8. Capital One shall not impose an over-the-limit fee in excess of the total amount of credit extended above the credit limit during the billing cycle in which the fee is imposed. . . .

> The following provisions apply to subprime open-end credit accounts issued to consumers in West Virginia:

> 25. Capital One shall not impose any penalty fees except for a late fee. . . .

> 27. Any fees other than an annual fees [sic] shall be limited to costs. E.g., Cash advance fees shall be limited to the lost interchange fee not received on a cash transaction. A fee for the replacement of a lost card would cover the cost of express mail.

*See* Proposed Settlement, at 4, 6-7 . The settlement proposal, Defendants argue, constitutes an "other paper" from which the Court can now ascertain federal jurisdiction because it demonstrates

that Plaintiff is clearly attempting to regulate the amount of fees that Capital One charges.

As this Court previously noted, § 85 of the NBA provides that "[a]ny association may take, receive, reserve, and charge on any loan . . . or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located." 12 U.S.C. § 85. Section 86 additionally provides a remedy for an individual who is charged "a rate of interest greater than is allowed by section 85." 12 U.S.C. § 86. The term "interest," as used within §§ 85 and 86 of the NBA, encompasses late fees and over-the-limit fees. *See Smiley v. Citibank (S.D.) N.A.* 517 U.S. 735, 744-47 (1996). As the Supreme Court in *Beneficial* held, "[b]ecause §§ 85 and 86 provide the exclusive cause of action for such claims, there is . . . no such thing as a state-law claim of usury against a national bank." 539 U.S. at 11. Therefore, if Defendants are correct, *Smiley* and *Beneficial* would require the Court to conclude that Plaintiff's claims are completely preempted by federal law in light of new evidence of the underlying substantive core of those claims. The Court does not, however, agree with Defendants.

Plaintiff's settlement proposal is just that: a settlement proposal. Plaintiff has not sought the challenged injunctive relief in the Complaint or a court order. Instead, it is seeking the relief via a proposed external *agreement* between the parties. As Plaintiff correctly points out, a settlement proposal is a proposal to create a contract between two parties, and is not always limited by jurisdictional constraints. That is, parties often seek in settlement what they cannot necessarily obtain in court. Plaintiff's settlement offer may (or may not) be accepted by Defendants. But that fact does not change the Court's underlying finding that Plaintiff's claims in the *Complaint* are not preempted. Count III, as previously discussed, challenges certain "enumerated practices and procedures as deceptive, fraudulent, or unconscionable under the WVCCPA—not the amount of fees

or interest rate." *Capital One*, 2010 U.S. Dist. LEXIS 74639, at *12. For that reason, it is not completely preempted. Similarly, Plaintiff's challenge in Count VII of the Complaint "describe[s] an alleged scheme to induce holders of low-limit credit cards into incurring over-the-limit fees." *Id.* at *13. Plaintiff only challenges Defendants' alleged fraudulent and deceptive practices, not the level of interest they charge on credit cards.

Nor do the cases Defendants now cite change the Court's conclusion. *See, e.g.*, *Campbell v. Rests. First/Neighborhood Rest., Inc.*, 303 F. Supp. 2d 797, 799 (S.D. W. Va. 2004) (holding that a pre-suit demand letter served as proof of the amount in controversy for diversity jurisdiction); *Link Telecomms., Inc. v. Sapperstein*, 119 F. Supp. 2d 536, 542 (D. Md. 2000) (noting that interrogatory responses were "other papers" under § 1446(b)). At most, these cases stand for the proposition that, "if the grounds for removal do not appear on the face of the initial pleading, then the thirty day removal period may be triggered upon 'receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable.'" *Link Telecommns*, 119 F. Supp. 2d at 542 (citing 28 U.S.C. § 1446(b)) (emphasis added). That is, "other paper[s]" may serve as relevant evidence of federal jurisdiction.

However, the probative value of this type of evidence will inevitably differ based upon the context of a case. For instance, in *Lien v. H.E.R.C. Prods., Inc.*, 8 F. Supp. 2d 531 (E.D. Va. 1998), the defendant removed a breach of contract lawsuit filed by an employee. In determining the amount in controversy, the court considered a settlement proposal submitted by the plaintiff. *See id.* at 534 n. 7. In a footnote, the Court reasoned that the "settlement letter . . . constitutes 'other paper' under 28 U.S.C. § 1446(b), . . . justifying removal in and of itself." *Id.* The Court agrees

-7-

with *Lien* that settlement proposals are highly probative of the damages a plaintiff seeks when the amount in controversy is in dispute.  In typical disputes over the amount in controversy, the court needs a means to ascertain the value of a plaintiff's claim where the complaint is otherwise unhelpful in that endeavor.  The same is not necessarily true where the alleged basis for jurisdiction is a federal question.  In these instances, the Court must rely heavily on the plaintiff's complaint as indicia of the claims he advances and the relief he seeks.  Here, as the Court previously found, these factors counsel in favor of a remand.  The mere fact that a plaintiff appears to seek federal relief via a settlement proposal or a discovery response does not necessarily provide an adequate basis for removal if it does not otherwise appear that federal law creates his cause of action.  *Cf. Redd v. McDowell County Bd. of Educ.*, No. 1:07-0416, 2008 WL 516398, at *5 (S.D. W. Va. Jan. 7. 2008) (holding that plaintiff's deposition testimony that she was discriminated against in violation of the 13th Amendment did not trigger jurisdiction under 28 U.S.C. § 1331).

The burden of establishing jurisdiction is always on the party seeking removal.  *See Mulcahey v. Columbia Organic Chems. Co., Inc.*, 29 F.3d 148, 151 (4th Cir.1994).  While a settlement proposal may in fact serve as evidence of federal question jurisdiction, the Court is still unsatisfied that Plaintiff's Complaint asserts a federal question in this case.  Plaintiff has not sought the challenged relief via a court order, nor has he asked the State court to award such relief.  Moreover, Plaintiff has assured the Court that he "has not been seeking the challenged remedies from the [State] court."  *See* Pl.'s Mem. Supp. Mot. to Remand 6, No. 9.  In that vein, he specifically states the following:

> The State's legal claims and positions have not changed since this Court remanded this case to state court one year ago. . . . Defendants assert that three specific injunctive provisions set forth in the State's settlement proposal create a federal question because they seek remedies that are

> completely preempted by the [NBA].  They appear to suggest either that
> the State has changed its position as to the type of remedy it seeks in the
> litigation or that the State has been misleading the court and defendants
> all along as to the true nature of that relief.  *Neither is true.*

*Id.* at 5-6 (emphasis added).[1]  Thus, the Court finds that Defendants have failed to meet their burden

of establishing federal jurisdiction.  The proposal does not by itself change this conclusion.[2]

Finally, while the Court "may go beyond the allegations of the complaint . . . [and order] an

evidentiary hearing to determine if there are facts to support the jurisdictional allegations," *see*

*Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (quoting *Adams v. Bain*, 697 F.2d 1213,

1219 (4th Cir.1982)), it is satisfied that such a hearing would do no more than rehash the arguments

and evidence presented in the parties' memoranda and the record.  In support of their motion for a

hearing, Defendants make much of the fact that Plaintiff has refused to fully respond to discovery

in State court which seeks information on the type of injunctive relief he desires.  Defendants claim

that Plaintiff has implicitly admitted in the motion to remand that he has refused to answer because

Defendants already know the relief he desires in light of his settlement proposal—relief that includes

completely preempted injunctive measures.  However, the Court will not become engulfed in a State

discovery dispute; the Circuit Court of Mason County is more than adequately equipped to resolve

---

[1] The Court has no reason to believe that the Circuit Court is not capable of holding Plaintiff to this position, and limiting his ability to seek preempted remedies in State court.

[2] Defendants also claim that the settlement proposal asserts a substantial federal question. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314, 319-20 (2005) (permitting the exercise of federal jurisdiction even where federal law does not create the plaintiff's cause of action, provided that the claim turns on a substantial federal issue).  Defendants claim that Counts III and VII turn on substantial and dispositive issues of federal law because they challenge the amount and legality of the interest and fees charged.  However, as this Opinion obviously suggests, the Court finds this argument unpersuasive.  Plaintiff's claims only concern disputed issues of State law, and the recent settlement proposal does not affect the Court's conclusions.

-9-

this issue.  Moreover, again, the mere fact that Plaintiff may technically seek injunctive relief via a settlement order that he is not entitled to in court does not create a federal question.  As noted, the Attorney General has disavowed any inference that he is seeking prohibited relief via the Complaint. Accordingly, on the facts now before the Court, there remains insufficient evidence to find federal jurisdiction, and little reason to hold a hearing on this issue.

## III.    Conclusion

For the reasons explained above, the Court **GRANTS** Plaintiff's motion to remand.  [Doc. 8] The Court additionally **DENIES** Defendants' motion for an evidentiary hearing. [Doc. 12]  The Court hereby and again **DIRECTS** the Clerk to **STRIKE** this case from the docket and **REMAND** it to the Mason County Circuit Court where it was originally filed.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:    August 11, 2011

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-10-